UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL J. NOWACKI, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:12-CV-01296 (JCH) |
| | : | |
| v. | : | |
| | : | |
| TOWN OF NEW CANAAN, et al., | : | MARCH 1, 2013 |
| Defendants. | : | |

AMENDED RULING RE: MOTIONS TO DISMISS FILED BY
THE BOARD OF EDUCATION DEFENDANTS (DOC. NO. 103)
AND HERSAM ACORN NEWSPAPERS LLC (DOC. NO. 104)

I.     INTRODUCTION

Plaintiff Michael J. Nowacki ("Nowacki") brings this action against the Town of

New Canaan and several of its current and former municipal employees, several current

and former employees of the New Canaan Board of Education, several current and

former employees of the New Canaan Police Department ("NCPD"), and Hersam Acorn

Newspapers, LLC ("Hersam Acorn").[1]  The Amended Complaint asserts seven counts,

each alleging a violation of Nowacki's rights under 42 U.S.C. §§ 1983 and 1988 and the

U.S. Constitution.  See Am. Compl. (Doc. No. 88).

Hersam Acorn filed a Motion to Dismiss (or, in the alternative, a Motion for

Summary Judgment) on the basis that Count 2 fails to state a claim upon which relief

may be granted under Federal Rule of Civil Procedure 12(b)(6).  See Hersam Acorn

Mot. to Dismiss (Doc. No. 104).  The BOE defendants filed a Motion to Dismiss Counts

---

[1] The individual defendants, who are named in their individual and official capacities, are:  Dr. David Abbey, Dr. Mary Kolek, Tony Pavia, Dr. Brian Luizzzi, Jay Egan, Hazel Hobbs, and Nicholas R. Williams (collectively, the "BOE defendants"); Mark DeWaele, Thomas O'Dea, Jr., Stephen Karl, James Cole, Dexter Sutton, Stuart Sawabini, Stuart "Jeb" Walker, Robert E. Mallozzi, III, and Cheryl Pickering Jones (along with the Town of New Canaan and Nicholas R. Williams, the "Town defendants"); and Edward Nadriczny, Leon Krolikowski, Kevin Casey, Mark DeFelice, Jason Kim, Michael O'Sullivan, Carol Ogrinc, Thomas Swindon, Joseph Farenga, Vincent Demaio, William Ferri, James George, Fred Pickering, Christian Gray, and John Milligan (collectively, the "Police defendants").

4 through 7 of the Amended Complaint for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which

relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  See BOE Def.'s

Mot. to Dismiss (Doc. No. 103) ("BOE Mot. to Dismiss").  No other Motions to Dismiss

have been filed.

Count 2 alleges that Hersam Acorn deprived Nowacki of his right to freedom of

speech under the First Amendment.  Counts 4 and 5 have been withdrawn.  Count 6

alleges that the BOE defendants deprived Nowacki of his rights to freedom of speech,

freedom of peaceful assembly, and freedom to petition for redress of grievances under

the First Amendment.  Count 7 alleges that all defendants deprived Nowacki of his right

of "family association" under the First, Fourth, and Ninth Amendments.[2]

## II.   FACTUAL BACKGROUND[3]

A.  Nowacki's Allegations Against the BOE Defendants.

Nowacki is a resident of the Town of New Canaan, Connecticut.  Am. Compl.

(Doc. No. 88) ¶ 1.  He alleges that, at all relevant times, the New Canaan Public

Schools had a formal written policy regarding under what circumstances students could

be released from school.  Id. ¶ 31.  This policy stated that students should be released

from school "only to their parents or to persons authorized by their parents either in

writing or by being listed on the student's emergency card."  Id.  The policy also

provided that, if a parent requested that another parent be prohibited from taking a

---

[2] Counts 1 and 3 do not assert claims against the BOE defendants or Hersam Acorn.  Nowacki has withdrawn Count 4 (equal protection) and Count 5 (due process).  He has also withdrawn the Fourteenth Amendment basis for his claims under Count 7.  See Opp. BOE Mot. to Dismiss at 5–6.

[3] For purposes of the motions to dismiss, this court takes the facts alleged in the Amended Complaint as true and draws all inferences in Nowacki's favor.  See Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003).

student from school, such a request would be honored "only after the legality of the request to prohibit has been determined." Id.

Nowacki alleges that, on the evening of March 27, 2011, he requested assistance from the New Canaan Police Department (the "NCPD") to "secure his right to the custody of his minor children." Id. ¶ 34. Members of the NCPD refused to provide assistance, and defendant Farenga allegedly told Nowacki he would arrest him for "filing a false complaint" if Nowacki claimed that the situation constituted an "emergency." Id.[4]

On March 28, 2011, Nowacki allegedly provided defendants Pavia and Abbey with written documentation stating that Nowacki had "primary physical custody" of his two children. Id. ¶ 32. Despite this, Pavia and Abbey "caused" Nowacki's son to be delivered to Lauren Mantenudo, an employee of Nowacki's ex-wife Suzanne Sullivan. Id. ¶¶ 28, 35. Nowacki wrote to Pavia and Abbey the next day and told them to "enforce their own rules and regulations" and "protect his court-ordered rights of custody." Id. ¶ 36. Instead, they "permitted" his son to be "turned over" to Mantenudo. Id. ¶ 37. Nowacki also alleges that he learned that his son "had engaged in underage drinking of alcohol" while in Mantenudo's custody and reported this to Abbey as well as to NCPD officers. According to Nowacki, Abbey "assigned" Pavia to investigate Nowacki's claims, and they subsequently "refused to take any action." Id. ¶¶ 39–41.

Nowacki further alleges that, on or about May 20, 2011, defendant Krolikowski, a captain in the NCPD, sent him a letter stating that Nowacki was prohibited from going to New Canaan High School or Saxe Junior High School or communicating with "anyone

---

[4] Nowacki alleges that Nadriczny, the New Canaan Chief of Police, had previously entered an order prohibiting Nowacki from speaking to any member of the NCPD, other than Nadriczny. Am. Compl. ¶ 33. Nowacki also alleges that he was only permitted to speak to Nadriczny in case of an emergency. Id.

in the New Canaan Public Schools," except for then-Superintendent of Schools Abbey. Id. ¶ 42.  The letter also stated that violation of any of those restrictions would result in his being arrested.  Id.  The Amended Complaint alleges further that, pursuant to this policy, Nowacki was denied access to school property for the following events:  lacrosse games, id. ¶ 43, an "important public meeting" regarding "the college process," id. ¶¶ 44–45, various other "team banquets and parenting events at the New Canaan public schools," id. ¶ 46, and "meetings of the New Canaan Board of Education," id. ¶ 52.  Nowacki alleges that he wrote to defendants Kolek and Hobbs, requesting that they "remove the restrictions on his rights," and that they did not do so.  Id. ¶¶ 51, 53.

      B.  Nowacki's Allegations Against Hersam Acorn.

      Separately, Nowacki alleges that, on or about December 16, 2011 and December 23, 2011, Hersam Acorn refused to accept a "paid opinion article" submitted by Nowacki containing allegations made by Nowacki against "selected public officials and municipal employees of the Town of New Canaan," as well as certain businesses located in New Canaan.  Id. ¶¶ 48–49.  Nowacki also alleges that, on or about March 15, 2012, Hersam Acorn refused to accept a paid advertisement by Nowacki that announced his candidacy for the Connecticut General Assembly.  Id. ¶ 50.

**III.   STANDARD**

      A.  Rule 12(b)(1)

      A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d. Cir. 2008).  In assessing a motion to dismiss for lack of subject matter

jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006).  The court, however, refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court has subject matter jurisdiction over the complaint. See Morrison, 547 F.3d at 170; see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  That showing may not be made solely by implication.  See Morrison, 547 F.3d at 170.  A court evaluating a Rule 12(b)(1) motion "may resolve the disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

B. Rule 12(b)(6)

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (alteration in original)).  As with Rule 12(b)(1), the court takes the factual allegations of the complaint to be true, Hemi Grp., LLC v. City of New York, 130 S.Ct. 983, 986–87 (2010), and draws all reasonable inferences in plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).  However, the tenet that a court must accept a complaint's

allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (citing Twombly, 550 U.S. at 555). Additionally, the court considers only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005) (citing Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir. 1996)).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV.   DISCUSSION

### A.   The BOE Defendants.

Counts 6 and 7 of the Amended Complaint are the only remaining counts that are directed at the BOE defendants. The BOE defendants make two arguments: first, that the court lacks subject matter jurisdiction over Nowacki's claims under the substantiality doctrine; and second, that the claims against the BOE defendants should be dismissed for failure to state a claim upon which relief may be granted. See BOE Mot. to Dismiss at 4–5, 11. This court finds that it has subject matter jurisdiction, but dismisses the Amended Complaint for failure to state a claim upon which relief may be granted.

6

1.  Subject Matter Jurisdiction

A federal court must dismiss a case upon finding that it lacks subject matter jurisdiction.  See, e.g., Manway Constr. Co. v. Hous. Auth. Of Hartford, 711 F.2d 501, 503 (2d Cir. 1987) ("It is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction; and if it does not, dismissal is mandatory.").  The burden is on the party asserting jurisdiction to demonstrate that such jurisdiction exists.  See Morrison, 547 F.3d at 170.  A court may "dismiss for lack of subject matter jurisdiction—even if a federal claim is asserted on the face of the complaint—where the federal question is so plainly insubstantial as to be devoid of any merits and thus does not present any issue worthy of adjudication."  Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1189 (2d Cir. 1996) (internal quotation marks and alterations omitted) (quoting Giulini v. Blessing, 654 F.2d 189, 192 (2d Cir. 1981)); see Hagans v. Lavine, 415 U.S. 528, 536 (1974) (noting that where a claim is "absolutely devoid of merit," a federal district court is precluded from exercising its jurisdiction).

However, the Second Circuit has noted that courts should dismiss on such grounds "only under narrow circumstances."  So long as "on its face the complaint is drawn so as to seek recovery under federal laws or the Constitution," then courts should "assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits."  Nowak, 81 F.3d at 1188–89; see also Giulini, 654 F.2d at 192 (requiring district court to entertain section 1983 action "charging denial of constitutional rights by a state agency," despite noting that "success on the merits may be unlikely").

Here, Nowacki's claims against the BOE defendants are not so "completely devoid of merit as to not involve a federal controversy."  Nowak, 81 F.3d at 1189 (quoting IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993)). It is clear from the face of the Amended Complaint that it is drawn "so as to seek recovery under . . . the Constitution."  Id.; see generally Am. Compl. (claiming deprivation of rights under the Constitution).  Accordingly, this court assumes subject matter jurisdiction and evaluates Nowacki's claims under Rule 12(b)(6).

2.  First Amendment

Nowacki alleges that the BOE defendants deprived him of his "right to freedom of speech, freedom of peaceful assembly, and freedom to petition for redress of grievances."[5]  Am. Compl. at 19.  As a preliminary matter, all of these claims relate to events on school property.[6]  Courts have long held that state and local officials are empowered to take action to preserve order and tranquility on school property.  See Carey v. Brown, 447 U.S. 455, 470–71 (1980) (noting that state officials are not "powerless" to protect the public from "boisterous and threatening conduct that disturbs the tranquility of" schools); Goss v. Lopez, 419 U.S. 565, 582–83 (1975) (holding that students who pose a "continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school").  Further, under Connecticut law, management and maintenance of schools is a local matter.  See

---

[5] The Amended Complaint does not make clear which general allegations support which of his claims.  Indeed, each count simply states the names of the defendants and which right Nowacki claims has been deprived.  See Am. Compl. at 16–20.  However, the court has attempted to match each allegation to its proper count.

[6] Although the Amended Complaint does not specify explicitly that the Board of Education meetings are held on school property, Nowacki assumes this fact in his motion papers.  See, e.g., Opp. BOE Mot. to Dismiss at 14 (arguing that "the plaintiff's First Amendment rights involve both speaking at and assembling at the public meetings of the Board of Education, which happen to be conducted in a school building").

Conn. Gen. Stat. §§ 10-220 (providing that local school boards "shall have the care, maintenance, and operation of buildings . . . and other property used for school purposes . . . ."), 10-221 (providing that boards of education have authority to prescribe rules for management and discipline within public schools). Moreover, with respect to the First Amendment, "public secondary and elementary school administrators are granted more leeway" than even public colleges and universities. Sypniewski v. Warren Hills Regional Bd. of Educ., 307 F.3d 243, 260 (3d Cir. 2002) (regarding school disciplinary rules). Accordingly, school officials "have the authority and responsibility for assuring the parents and third parties conduct themselves appropriately while on school property." Lovern v. Edwards, 109 F.3d 648, 655 (4th Cir. 1999).

       i.    Freedom of speech. The right to freedom of speech under the First Amendment is not absolute. The Supreme Court has identified three categories of speech fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." Ark. Educ. Television Comm'n v. Forbes, 523 U.S. 666, 677 (1998) (quoting Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 802 (1985)). With respect to the third category, "[t]he government can restrict access to a nonpublic forum as long as the restrictions are reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's views." Id. at 678 (alteration in original) (internal quotation marks omitted) (quoting Cornelius, 473 U.S. at 800).

      A school is generally considered a non-public forum, as it is "a place in which the government 'does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use

it.'" DeFabio v. E. Hampton Union Free Sch. Dist., 658 F. Supp. 2d 461, 473 (E.D.N.Y. 2009) (quoting Ark. Educ. Television Comm'n, 523 U.S. at 679)); see also M.B. v. Liverpool Cent. Sch. Dist., 487 F. Supp. 2d 117, 133 (N.D.N.Y. 2007) ("Generally, school facilities are nonpublic forums.").

A nonpublic forum may sometimes be converted into a designated public forum. The Second Circuit has noted that a "limited public forum" is a type of designated public forum that "arises where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussions of certain subjects." Make The Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004) (internal quotation marks omitted) (quoting Hotel Employees & Rest. Employees Union Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation ("HERE"), 311 F.3d 534, 543 (2d Cir. 2002)).

The Second Circuit has laid out the permissible restrictions on speech within each category. For a non-public forum, "[c]ontent-based exclusions of speech need only be viewpoint neutral and reasonable in relation to the forum's purpose." Id. For a limited public forum, the government may make content-based exclusions for speech that does not "fall within the category of uses to which the forum has been opened, so long as those exclusions satisfy the viewpoint-neutral and reasonableness criteria" applicable to speech in a non-public forum. Id.

The events to which Nowacki claims he has been restricted access are classified properly under the "non-public forum" category because they are held on school property. Certain events, such as the parenting events, conceivably could fall under the "limited public forum" category, if they are events where access is restricted for specific

purposes or to select individuals.[7]  See HERE, 311 F.3d at 553.  Indeed, Nowacki

argues that the events to which he alleges his access has been restricted should be

considered limited public fora because "each of them is open to the public, or to a

limited public, . . . for a stated purpose rather than for all purposes."  Opp. BOE Mot. to

Dismiss at 14–15.  However, the Amended Complaint fails to allege that the school

intended for any of these events to be events where expressive activity was limited "to

certain kinds of speakers or to the discussions of certain subjects."  Make The Road by

Walking, Inc., 378 F.3d at 143; see also BOE Mot. to Dismiss at 29 (noting that the

Amended Complaint fails to allege that the events in question were designed to elicit

speech or other expressive activity from the public).

        Regardless of whether these events are classified as non-public or limited public

fora, the Amended Complaint fails to allege that defendants violated Nowacki's First

Amendment right to free speech.  The Amended Complaint does not allege that

Nowacki has been prohibited from engaging in protected speech; it merely alleges

instances in which Nowacki has been restricted from speaking to "school personnel or

coaches" or from "speaking to members of the Board of Education . . . before or after"

meetings.  Am. Compl. ¶ 46, 52.  Based on this fact alone, this court "need go no

further" in its analysis.  See Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 229 (2d Cir.

1996) (quoting Cornelius, 473 U.S. at 797, for the proposition that if the speech at issue

is unprotected, then a reviewing court "need go no further").  In fact, Nowacki argues

that he does not even ask to speak at some of the events.  See Opp. BOE Mot. to

Dismiss at 15.

_____

[7] Nowacki's allegations regarding Board of Education meetings likely would be analyzed under the category of non-public forum rather than limited public forum, as Nowacki alleges that his speech is restricted "before or after" those meetings, not during them.  See Am. Compl. ¶ 51.

Moreover, Nowacki does not show that the alleged restrictions on his speech violated the First Amendment.  Here, it is unclear exactly what restrictions the Amended Complaint alleges are imposed on Nowacki.  For example, the Amended Complaint alleges that Nowacki "has been prohibited from attending" various events on school property, but later in that paragraph alleges that the BOE defendants "have permitted [Nowacki] to attend" certain events.  See Am. Compl. ¶ 46.  Nowacki does allege that the BOE defendants have "prohibited him from speaking to any school personnel or coaches" while he is on school property, id., and that he is prohibited "from speaking to members of the Board of Education or school faculty members" before and after Board of Education meetings.  Id. ¶ 52.  Drawing all inferences in the Amended Complaint in Nowacki's favor, he appears to allege that he is restricted from attending some events on school property and is permitted to attend others; but that even when he is permitted to attend events, his ability to speak at those events is restricted.

These restrictions do not violate Nowacki's right to free speech.  School boards have discretion to act to preserve order and tranquility on school property, and such discretion extends to the ability to limit Nowacki's "entry onto school property," even for "events scheduled for and open to the public."  Lovern, 109 F.3d at 651 (noting that the First Amendment does not guarantee "boundless access to school property").  Further, there is no indication or allegation that any restriction on his ability to speak to school officials on school property was intended to restrict the content of his speech rather than to preserve order and tranquility on school property.  The BOE defendants "did not seek to affect [Nowacki's] conduct except on [school] property," and the restrictions on his access to and speech on school property did not "directly and sharply" implicate his

constitutional rights.  Id. at 656.  Indeed, Nowacki argues that the BOE defendants may not restrict his speech "in content-related ways unique to either the content of the speech or the person speaking," but notably does not allege that the BOE defendants engaged in any such content-based exclusions.  See id.

Because the Amended Complaint does not allege that the BOE defendants deprived Nowacki of protected speech, and because the Amended Complaint does not make allegations showing that any restrictions were unreasonable or based on Nowacki's viewpoint, Nowacki's freedom of speech claims should be dismissed as against the BOE defendants.

      ii.   Freedom of assembly.  Nowacki also argues that the BOE defendants deprived him of his right to freedom of assembly.  The right to freedom of assembly, or the right of peaceable assembly, "is a right cognate to those of free speech . . . and is equally fundamental."  De Jonge v. Oregon, 299 U.S. 353, 364 (1937).  As with the right to free speech, the level of protection it provides depends on the forum.  See Cornelius, 473 U.S. at 799–800 ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." (emphasis added)).  Again, with regard to nonpublic fora, "the government enjoys greater latitude . . . and may limit access or content based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."  Byrne v. Rutledge, 623 F.3d 46, 54 (2d Cir. 2010) (quoting Cornelius, 473 U.S. at 806).

Drawing all inferences in Nowacki's favor, the Amended Complaint appears to allege that Nowacki's right to freedom of assembly was violated when the BOE defendants restricted his access to school property to attend "banquets, school plays and parenting events." Am. Compl. ¶ 46. However, again, the Amended Complaint fails to plausibly allege that this restricted access was not reasonable or viewpoint neutral. For example, the Tenth Circuit held that the right to freedom of assembly was not violated even where parents "were not allowed to attend Board meetings or to go on school property for any school or community event." McCook v. Spriner Sch. Dist., 44 Fed. Appx. 896, 910 (10th Cir. 2002). Noting that the parents had "presented no authority establishing a constitutional right to go onto school property," the court also held that the parents' claims that they could not go onto school property to vote did not implicate the freedom to assembly, because they "could have voted in person . . . or through the mail, via absentee ballot." Id. at 910–11.

Nowacki likewise has not presented any authority establishing a constitutional right to go onto school property. Further, the restrictions placed on the parents in McCook were far more restrictive than what Nowacki alleges here, as he concedes that he is permitted on school property at certain times and for certain events. Yet, the McCook court found that those more restrictive conditions did not violate the freedom to assembly. Thus, this court finds that the BOE defendants did not violate Nowacki's First Amendment right to assembly when they placed restrictions on his ability to access school property.

      iii.   Freedom to petition for redress of grievances. The freedom to petition is "cut from the same cloth as the other guarantees" of the First Amendment. McDonald v.

14

Smith, 472 U.S. 479, 482 (1985).  "One aspect of the right to petition is the right of access to the courts, and the right to petition for grievances may be exercised by filing a lawsuit and petitioning the courts for relief."  Alvarez v. City of New York, 31 F. Supp. 2d 334, 343 (S.D.N.Y. 1998) (internal quotation marks omitted) (quoting California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)).

The Third Circuit has found that an elementary school student's freedom to petition for redress of grievances was not implicated when the school allegedly prevented her from circulating a petition on school property.  Walker–Serrano ex rel. Walker v. Leonard, 325 F.3d 412 (3d Cir. 2003).  Here, the Amended Complaint does not even go that far.  In fact, it alleges no facts that could plausibly allege such a violation.  Nor does Nowacki's Opposition brief cite a single case offering support for this claim.  To the contrary, the Amended Complaint alleges that certain of the BOE defendants have permitted Nowacki to attend certain events, thereby suggesting that a process does exist whereby Nowacki is able to petition officials to attend certain events held on school property.  See Am. Compl. ¶ 46.  Accordingly, this court finds that the BOE defendants did not violate Nowacki's First Amendment freedom to petition.

3.   Right to Familial Association

The Second Circuit has recognized a right to familial association as a substantive right under the Due Process Clause "to remain together without the coercive interference of the awesome power of the state."  Tenenbaum v. Williams, 193 F.3d 581, 600–601 (2d Cir. 1999) (quoting Duchensne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977)).  This right is described as a "constitutionally protected liberty interest in the care, custody and management of [a parent's] children."  See id. at 593 (citing cases).

This right is a narrow one that is implicated only where a government actor exercises power "without any reasonable justification in the service of a legitimate governmental objective."  Id. at 600 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  Indeed, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense' and therefore unconstitutional."  Id.

Notably, Nowacki appears to have conceded the due process aspect of his familial association claim.  See Opp. BOE Mot. to Dismiss at 6 ("[B]ecause the right of familial association has a constitutional basis in the First, Fourth and Ninth Amendments, it is not necessary to constitutionalize it under the more general rubric of substantive due process.").  However, the cases he cites rely largely on the right to familial association as a liberty right arising under the Due Process Clause.  See id. at 7–13 (citing cases discussing right under Due Process Clause).  However, even assuming arguendo that Nowacki maintains the due process aspect of his claim, it would still fail.

In Tenenbaum, the court held that a student's "temporary separation . . . from her parents," in order to determine that her parents had not abused her, was not "so shocking, arbitrary, and egregious" that it constituted a substantive due process violation.  Id.  The Tenenbaum court reasoned that a temporary separation "would not deprive parents completely of the right to rear their children," as parents "retained substantial responsibility for important decisions in their child's life."  Id. (citing Joyner v. Dumpson, 712 F.2d 770, 778 (2d Cir. 1983) (holding that mandatory custody transfer social services law did not violate right to family integrity under substantive due process)).

16

Here, the Amended Complaint alleges that certain of the BOE defendants, on two occasions, "caused" and "permitted" Nowacki's son to be turned over to an employee of Nowacki's ex-wife, in contravention of written school policy. Am. Compl. ¶¶ 6–9. There are no allegations that the BOE defendants actively separated Nowacki from his son, much less that they deprived him completely of his right to rear his children.[8] Neither permitting a student to be turned over to an employee of a parent nor allegedly failing to adhere to written internal policy constitutes "shocking, arbitrary, and egregious" behavior. Thus, these allegations cannot plausibly support Nowacki's contention that his right to familial association has been violated by the BOE defendants.[9]

The Supreme Court has also recognized a right to familial association under the Ninth Amendment. See Stanley v. Illinois, 405 U.S. 645, 651 (citing Griswold v. Connecticut, 381 U.S. 479, 496 (1965) (Goldberg, J., concurring)). In the context of the Ninth Amendment, the right has been explained as "the right of privacy in marriage," and prohibits the government from encroaching on a "fundamental personal liberty," absent a compelling state interest. Griswold, 381 U.S. at 497–98 (Goldberg, J., concurring). The Amended Complaint makes no allegations that plausibly support a claim that the BOE defendants encroached on Nowacki's right of privacy in marriage, and Nowacki does not offer any helpful explanation of this claim. See Opp. BOE Mot. to Dismiss at 7–13.

---

[8] The Amended Complaint even concedes that Nowacki is permitted to attend his daughter's lacrosse games, even if he cannot speak to school personnel at such events. Am. Compl. ¶¶ 43, 46.

[9] To the extent that the Amended Complaint could be read to allege a violation of the right to familial association under procedural due process, such a claim would also fail. The Amended Complaint does not plausibly allege a deprivation of any property interest.

Nor does Nowacki have a plausible claim against the BOE defendants if the right to familial association is analyzed under the Fourth Amendment. The Amended Complaint does not allege that any of the BOE defendants engaged in any action that would constitute an unreasonable search or seizure under the Fourth Amendment.[10] Thus, this court finds that Nowacki has not plausibly alleged that the BOE defendants deprived him of the right to familial association.

B. Hersam Acorn.

Count 2, the only count directed against Hersam Acorn, alleges that Hersam Acorn deprived Nowacki of his right to freedom of speech under the First Amendment. Nowacki alleges that on two occasions in December 2011, Hersam Acorn "refused to accept a paid 'opinion' article" that Nowacki submitted for publication; and that in March 2012, Hersam Acorn refused to accept a paid advertisement announcing Nowacki's candidacy for the Connecticut General Assembly. Am. Compl. ¶¶ 48–50. Nowacki seeks relief under 42 U.S.C. § 1983. Id. at 16–17. Hersam Acorn argues that Count 2 should be dismissed for two reasons: first, because Hersam Acorn did not act "under color of law" for purposes of section 1983; and second, because Hersam Acorn did not violate Nowacki's rights under the First Amendment when it refused to publish his submissions.

1. Acting Under Color of Law

As this court has noted, "[s]ection 1983 only applies to the deprivation of rights that occur 'under color of state law.'" McNally v. Stewart, 618 F. Supp. 2d 168, 175 (D. Conn. 2009) (quoting 42 U.S.C. § 1983). When an action is brought under section

---

[10] Nowacki also does not plausibly allege a violation of the right to familial association under the First Amendment, for the reasons described supra.

1983, "under color" of law has been interpreted as requiring state action.  See id. (quoting Rendell–Baker v. Kohn, 457 U.S. 830, 838 (1982)).  Thus, "section 1983 cannot be used to challenge mere private conduct."  Id.

A newspaper generally is not considered a state actor for purposes of section 1983.  Wilson v. Central Kentucky News Journal, No. 12CV-P105-M, 2012 WL 3313176, *1 (W.D. Ky. Aug. 13, 2012) ("A newspaper and its employee are not state actors." (citing Davis v. Janczewski, 22 Fed. Appx. 533, 534 (6th Cir. 2001)); see Keisling v. Renn, 425 Fed. Appx. 106, 108 (3d Cir. 2011) (dismissing section 1983 action against newspapers, and noting that they are not "an arm of the federal government"); Antoine v. Star Ledger of New Jersey, 409 Fed. Appx. 492, 493 (3d Cir. 2010) (dismissing section 1983 claim against newspaper publisher for failure to allege that it acted "under color of state law").  Similarly, "[a]ctions by journalists in publishing a newspaper article do not constitute the requisite 'state action' to support state action claims."  Idema v. Wager, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000) (citing cases).

The Amended Complaint apparently attempts to satisfy the "state actor" requirement by alleging that Hersam Acorn "is owned by the brother of the New Canaan Town Treasurer and has received more than $300,000 in subsidies from the defendant Town of New Canaan."  Am. Compl. ¶ 25.  However, such allegations cannot plausibly support a claim that there exists a "close nexus between the State and the challenged action" sufficient to render Hersam Acorn a state actor for the purposes of section 1983. Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974).

First, "[g]overnment funding of a private entity, however, no matter how extensive, is insufficient to transform otherwise private conduct into state action."

19

Young v. Halle Hous. Assocs., L.P., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001).  In

Rendell–Baker v. Kohn, the Supreme Court noted that it had refused to find that

physicians and nursing home administrators were state actors where the nursing home

"depended on the State for funds; the State subsidized the operating and capital costs

of the nursing homes, and paid the medical expenses of more than 90% of the

patients."  Rendell–Baker, 457 U.S. at 840 (citing with approval Blum v. Yaretsky, 457

U.S. 991 (1982)).

Second, the allegation that Hersam Acorn's owner is related to the New Canaan

Town Treasurer also cannot plausibly support a finding that Hersam Acorn should be

considered a state actor.  Nowacki argues that a private actor such as Hersam Acorn is

subject to section 1983 liability if that actor "is involved in a conspiracy or participates in

joint activity with state actors."  Opp. Hersam Acorn Mot. to Dismiss (Doc. No. 110) at 7

(quoting Ballard v. Wall, 413 F.3d 510, 518 (5th Cir. 2005)).  But the Amended

Complaint does not allege that Hersam Acorn or any of its employees either conspired

with or participated in joint activity with a state actor.  Nor has Nowacki cited any cases

showing that a private company may be liable under section 1983 by mere virtue of the

fact that the owner of that company is related to a state official.

2.  First Amendment

Even if Nowacki could show that Hersam Acorn could be considered a state

actor under section 1983, the Amended Complaint would fail to state a claim upon

which relief could be granted because it does not allege the violation of a federal right.

According to Nowacki, Hersam Acorn's refusal to publish his submissions constituted a

violation of his right to free speech under the First Amendment.  However, "[t]he First

Amendment does not guarantee publication of personal views upon demand." <u>Newman v. Assoc. Press, Inc.</u>, No. 96-7176, 1996 WL 591307, *2 (2d Cir. Oct. 15, 1996).  In <u>Newman</u>, the plaintiff went to an office of the Associated Press (the "AP") and sought to have the AP publish information about an alleged "racketeering and conspiracy scheme among the New York City Board of Education, the United Federation of Teachers, and the New York Corporation Counsel." <u>Id.</u>  When the AP refused to publish such information, the plaintiff filed a section 1983 claim.  The Second Circuit held that the district court properly dismissed the plaintiff's claim against the AP, noting that "[t]he choice of material to go into a newspaper . . . constitute[s] the exercise of editorial control and judgment." <u>Id.</u> (internal quotation marks omitted) (quoting <u>Miami Herald Publishing Co. v. Tornillo</u>, 418 U.S. 241, 258 (1974)).  Here, Nowacki has offered no reason showing why Hersam Acorn should not be afforded the same editorial rights to choose what material to put into its publication.  Accordingly, Count 2 fails to state a cognizable claim under section 1983.

## V.   CONCLUSION

For the foregoing reasons, the BOE defendants' Motion to Dismiss (Doc. No. 103) is GRANTED as to Counts 6 and 7, and Hersam Acorn's Motion to Dismiss (Doc. No. 104) is GRANTED as to Count 2.  Counts 4 and 5 were withdrawn by Nowacki and are therefore DISMISSED.  Nowacki has until **March 19, 2013** to replead his claims, if he can do so in accordance with Rule 11 and under the standards set forth above.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 1st day of March, 2013.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge